IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ASHIDDA FORGUS
          Plaintiff,
v.                                                    Civil Action No. 3:16-cv-673

JAMES MATTIS, Secretary of Defense,
          Defendant.

## **OPINION**

Ashidda Forgus works at the Defense Logistics Agency ("DLA"), an agency of the Department of Defense, as a Business Process Analyst. The Court ordered Forgus to amend her initial complaint, instructing her to include a clear, brief statement of facts, a separately titled section identifying each legal claim and the facts that support it, as well as the relief sought, a list of defendants, and any documents she wished the Court to consider. After filing her amended complaint, Forgus moved for leave to amend again, which the Court granted. She filed a second amended complaint, containing three claims. She alleges (1) disparate treatment based on race and sex in violation of Title VII; (2) retaliation in violation of Title VII; and (3) hostile work environment.

Forgus' second amended complaint does not state a claim for relief. She fails to identify the adverse employment action required for her disparate treatment and retaliation claims, and she does not allege sufficient facts to meet the high bar for hostile work environment claims.

Accordingly, the Court grants the defendant's motion to dismiss the second amended complaint.

# I. BACKGROUND

Forgus alleges numerous facts spanning several years. The Court, however, may only consider actions or claims contained in the underlying Equal Employment Opportunity Commission ("EEOC") claim. *King v. Seaboard Coast Line R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976). Thus, the Court will not consider any actions before Forgus began working for DLA in 2009, or after March 23, 2012, when she filed her formal EEOC complaint. The Court has summarized the pertinent facts below.

Forgus, a black woman, began working at DLA in December 2009. DLA consists of several directorates, including the Business Process Support Directorate, which includes the Order Fulfillment Division. The Order Fulfillment Division has two branches: Order Management and Inventory Management. Forgus works as a Business Process Analyst, a position which exists in both the Order Management and Inventory Management branches. She works exclusively within the Order Management branch.

Forgus describes several instances in which she made complaints or requests, only to make more complaints or requests once her supervisors acquiesced. These include complaints about seating arrangements, assigned alternates,[1] trainings, informal office meetings, and, in January 2011, her discomfort with the office environment. Similarly, when Forgus complained her workload was too light, her supervisor assigned her to an important project, and then Forgus requested a reduction in her workload. This cycle repeated several times.

Forgus also describes her many attempts to transfer to the Inventory Management branch. On January 6, 2011, DLA posted a vacancy announcement for a Business Process Analyst, and Forgus applied. Although the selecting official put her on a list of qualified candidates, that

---

[1] Forgus uses the term "alternate" throughout her complaint, and it refers to employees assigned as backup on projects. *See, e.g.*, Second Am. Compl., at 8-9.

official said she would not consider Forgus because the vacancy described the position she already held. Her supervisor, Naomi Wilcox, told Forgus she could submit a written request if she wished to transfer to the Inventory Management branch. On January 31, 2011, Forgus emailed Wilcox stating she wanted to work within both branches and broaden the scope of her current job. In February 2011, Forgus had two meetings with her superiors in which she requested a transfer, and voiced concerns about her workload being too light. Wilcox again told Forgus she would have to submit a written request for the specific transfer, rather than utilize the application process. Nevertheless, Forgus told Wilcox to treat her application for Business Process Analyst as a written request. At one of these meetings, the selecting official said, "Well anyway, you're not getting the position," referring to the vacancy to which Forgus applied, a comment which Forgus describes as "caustic." (Second Am. Compl., at 11.) Two black men from outside the division were eventually chosen as Business Process Analysts, one in Order Management, and one in Inventory Management.

In October 2011, Wilcox assigned Forgus to a high priority project, which Forgus now argues was an attempt to force her out of her position by giving her too much work. On November 1, 2011, Forgus contacted an EEOC counselor. The next day, Wilcox, unaware of Forgus' EEOC contact, attempted to meet another of Forgus' requests by allowing her to split her time between her normal workload and the special project. When Forgus expressed concern about being fired for failure to keep up with her normal workload, Wilcox assured her she would not be removed. As far as the record shows, Forgus still holds the same position at DLA.

On March 23, 2012, Forgus filed a formal discrimination complaint with the EEOC. She requested a hearing before an Administrative Judge, and on January 8, 2014, the judge disposed of her allegations regarding discrimination, including hostile work environment and retaliation.

On February 26, 2014, she filed an appeal with the EEOC, which affirmed the Administrative Judge's findings. Forgus then brought this suit.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim, or judging the applicability of any defenses raised by the non-moving party. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "The tenet that a court must accept as true all of the allegations contained in a complaint[, however,] is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Swierkiewicz v. Sorema*, the Supreme Court held that a plaintiff alleging employment discrimination must follow only "the ordinary rules for assessing the sufficiency of a complaint." 534 U.S. 506, 511 (2002). Although *Iqbal* and *Twombly* "did alter the criteria for assessing the sufficiency of a complaint," the Fourth Circuit has held that "those cases did not overrule *Swierkiewicz*'s holding that a plaintiff need not plead the *evidentiary* standard" to survive a motion to dismiss under Rule 12(b)(6) in an employment discrimination case. *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 586-87 (4th Cir. 2015) (emphasis in original). Accordingly, at the pleadings stage, the Court must determine only whether a plaintiff has alleged sufficient facts to render plausible her claim.

## III. DISCUSSION

### A. Disparate Treatment Claim

In order to survive dismissal on a disparate treatment claim, Forgus must allege, as a threshold matter, some sort of adverse employment action. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James*, 368 F.3d at 375). Mere dissatisfaction fails to meet the standard; the plaintiff must show "some significant detrimental effect." *Id.*

Most of the facts Forgus alleges, such as problems with her seating arrangement and her level of work, fall far short of constituting adverse employment actions. The only event resembling an adverse employment action, and the only one the Court will discuss in more depth, is Forgus' request for a transfer to another branch.

Forgus applied for a position she already held, and the selecting official put her on a list of qualified candidates for the position. That official did not select Forgus; instead, she selected two black men from outside the division. Forgus' supervisor told her she needed to submit a written request to receive a transfer, but Forgus claims she orally requested a transfer in several meetings. In these meetings, Forgus requested a transfer in addition to changes in her workload. Afterward, her supervisor assigned her to a new project in which she received both an increased workload and experience in Inventory Management, the department to which she desired a transfer.

Forgus pleads insufficient facts to show an adverse action with regard to her transfer requests. An employee cannot expect to receive everything she requests from her employer. *See*

*James*, 368 F.3d at 377 ("an employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action"). Forgus cannot reasonably argue her requests were ignored, and has not shown any "significant detrimental effect" because she has not received a transfer. *Holland* 487 F.3d at 219. In fact, her supervisor made efforts to give Forgus experience in the Inventory Management branch. She thus fails to state a claim for disparate treatment.

### B. Retaliation Claim

A plaintiff bringing a retaliation claim must allege that (1) she engaged in protected activity, (2) the employer took adverse action against her, and (3) a causal relationship existed between the protected activity and the adverse employment action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (citation omitted).

Complaining about potential Title VII violations can constitute protected activity. *Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4th Cir. 2011). In this case, the EEOC identifies as the first instance of potential protected activity an internal complaint Forgus made to her supervisor regarding her work environment in January 2011.[2] Assuming this constitutes protected activity, only actions occurring after that date could possibly be retaliatory.

In the retaliation context, an adverse action is one which "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). Forgus alleges several adverse actions, such as increases and decreases in her workload, a "caustic" comment,

---

[2] The EEOC decision dated January 8, 2014, attached to the second amended complaint, describes Forgus' internal complaint in January 2011 as the first instance of alleged protected activity. (Second Am. Compl. Exh. 4, at 9.) Though the factual section of the EEOC decision states that Forgus complained about her "discomfort" within the Order Management branch in January 2011, the decision later describes those complaints as pertaining to "disparate treatment" for the purposes of Forgus' retaliation claim. *Id.* at 3, 9.

6

and refusal to interview or select her for a transfer position. (Second Am. Compl. Exh. 1, at 11.) As with her disparate treatment claim, Forgus has failed to show that any of these actions would have dissuaded a reasonable worker from engaging in protected activity. She thus fails to state a claim for retaliation.

### C. Hostile Work Environment Claim

To state a claim for hostile work environment, the plaintiff must plead (1) unwelcome conduct; (2) based on the plaintiff's protected characteristic; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer. *Causey*, 162 F.3d at 801.

Forgus belongs to a protected group. Section 15 of the EEOC Compliance Manual describes intersectional discrimination as discrimination based on "the intersection of two or more protected bases." Forgus' status as a black woman thus establishes her as a member of a protected group.

In order to show unwelcome conduct, however, Forgus must show some sort of conduct, based on that protected characteristic, which she made clear was unwelcome. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986). Furthermore, that conduct must be severe and pervasive, for which the Fourth Circuit has established a high bar:

> [P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test. Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII.

*E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations omitted).

Although Forgus has alleged facts indicating she complained to her superiors generally about the office environment, these allegations are too vague to demonstrate unwelcome conduct. Furthermore, she has not alleged any facts showing the environment about which she complained was a result of her protected characteristic. Even if Forgus could show unwelcome conduct based on a protected characteristic, none of the actions she alleges meet the high burden for severe or pervasive conduct. The actions Forgus alleges constitute, at best, merely rude or callous behavior.

## IV. CONCLUSION

Forgus fails to allege sufficient facts to state a claim for disparate treatment, retaliation, and hostile work environment. For the reasons stated, the Court grants the defendant's motion to dismiss.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record and to the pro se plaintiff.

Date: December 12, 2017
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge

8